[Civ. No. 6734.   Third Dist.   July 3, 1942.]

ALFREDO MATTEONI, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, J. J. Briare and W. R. Dunn for Appellant.

Linforth, Cannon & Miller, Jesse H. Miller, Eugene H. O'Donnell and Geary & Tauzer for Respondent.

THE COURT.—This action was brought to recover damages arising out of personal injuries received by plaintiff. The issues were submitted to a jury, which brought in a verdict

in the sum of $20,387.25. The appeal is taken from the judgment entered upon said verdict.

The facts of the case are practically without substantial conflict. At the date of the accident (July 12, 1939), and for many years prior thereto, defendant had constructed and maintained a power-line near Agua Caliente, Sonoma County, immediately south of a row of eucalyptus trees, which varied from seventy-five to one hundred feet in height, and were some twenty-eight years old. This type of eucalyptus tree was known as "Red Gum," and is more brittle than the ordinary eucalyptus, the limbs having a tendency to break and fall of their own weight. The power-line consisted of the usual poles, upon which were strung three wires carrying 6900 volts. Each of said wires carried about 4000 volts of electricity to ground. This voltage was sufficient to cause the death of a human being. Some of the limbs of said trees overhung the wires. In *1935*, a limb from one of these trees had fallen and broken the wires, causing a fire. This incident was called to the attention of the local agent of appellant at that time. Shortly after said fire, the local agent was told that "unless they trim the trees, some day somebody is going to get killed." The local agent said he had reported the situation to appellant. On the afternoon of July 12, *1939*, which was a normal summer day with no unusual or high wind blowing, a limb fell from one of the trees, said limb being six or seven inches in diameter and about twenty-five feet in length. This limb appeared to have fallen of its own weight. It remained attached to the trunk of the tree, and fell toward the south, and was found after the fire resting on the two remaining wires of the circuit, the third wire having been broken and fallen to the ground. One end of the broken wire was lying across the roof of a dwelling nearby, the broken end of said wire extending into the field. It is conceded by both parties that the fire started by the contact of a broken end of said wire with some tree or other object on the ground.

Respondent was a volunteer fireman, and when the alarm was given, proceeded to the premises. He reported to the fire chief in charge, who handed him a hose and told him to proceed to fight the fire. What took place thereafter is described by him as follows: "I got the hose in my hand, and that is all I remember; a great big train went by, just boom, like a locomotive going by; that is all. The next thing I remember, I was home in bed." Witness Eastman, who was the agent of the volunteer fire department, testified: "At

the time I handed him the hose to play water on the fire, I did not know the wire was down, because the flame and smoke was so bad we could not see anything."

With reference to whether or not respondent had knowledge that there was a live wire in the vicinity of the fire, he testified that he had no such knowledge at the time of the accident. The following excerpts from the record substantiate the foregoing statement: "Question: Now, in 1939, July 12, 1939, when you arrived at the fire, did you see any wire down? Answer: No, sir. . . . Question: At the time chief Eastman handed you the hose, is it not a fact, Mr. Matteoni, that you saw the wire on the ground at that time? Answer: No, sir." Witness Huber, called by appellant, testified that he was within five or six feet of respondent when the latter started to use the hose on the fire. He stated that he was only there a moment when he heard respondent say something, and saw him "straighten up and sort of stiffen up, and just at that time someone called out 'live wire.' *Before the cry of 'live wire,' I did not observe an electric wire upon the ground in that vicinity.*" Immediately thereafter, however, the witness testified that he did see the end of a live wire which was tangled on the ground and sparking. He stated, however, that before the accident he did not know that a live wire was down in the field. Substantially the same testimony was given by witness Delaney, called by appellant. No attack is made upon the amount of the award. Before the accident, respondent was a healthy and robust man, fifty-four years of age. Immediately thereafter he became paralyzed from the waist down. He was still under the care of physicians at the time of the trial, some twenty months after the accident. He has no sensation in either foot, and drags himself around with difficulty on two canes. He has suffered complete loss of his sexual powers. His heart function was impaired, and he will not be able to do any physical labor in the future.

Turning to the contentions of appellant on this appeal, no attack is made upon the sufficiency of the evidence to sustain the charge that appellant was negligent in failing to cut and remove those portions of the eucalyptus trees which overhung its power-lines, or which were likely to have fallen thereon under ordinary circumstances. There are but *two grounds* urged for a reversal of the judgment. The *first* is the contributory negligence of appellant as a matter of law; and the

*second,* the ruling of the court whereby defendant was denied the right to show a witness a previous written statement for the purpose of refreshing her recollection.

▇ Taking up the first contention, it is necessary to detail further facts which appear in the record, respecting the first fire in 1935. At that time respondent was called upon to fight a fire in the same vicinity, which was caused by a broken wire. In connection with that incident respondent testified: "Question: In 1935, did you know at the time you arrived at the scene of that fire that an electric wire caused it? Answer: No, sir. Question: How soon after the fire was over did you discover it? Answer: I discovered it right away. We got the people all out of that vicinity and we fought the fire, naturally, at a distance." The position upon this question which is taken by respondent is indicated in the following excerpt from his brief: "With the known dangers accompanying the presence of broken wires carrying high electric voltage, is it not reasonable to infer that if respondent even suspected that a live wire caused the fire, he would have taken added and unusual precautions to remain away from the broken wire? This he had previously done when, in 1935, a broken wire had caused a fire in the same field. If respondent had any knowledge of the broken wire being present at the time of the accident, is it not reasonable to assume that he would have followed the same course that he did in 1935 and fight the fire at a distance?" The question is whether or not it was negligence as a matter of law for respondent to have *forgotten the former incident* and the danger connected with fighting fire under such circumstances. It should first be pointed out that respondent, at the time of the second fire, and before the accident, had no knowledge that the power-line had been broken, or that the second fire was started by an electric current. The jury had a right to believe this testimony as against any inference which might be drawn to the effect that respondent must have known of the presence of a live broken wire, for the reason that he had, four years prior thereto, fought a fire there which had been caused by a broken live wire. Obviously, the jury arrived at the conclusion that respondent was telling the truth, and that he had no knowledge or recollection whatever of the danger arising out of fighting a fire under such circumstances. It is strongly urged by appellant that the previous experience of respondent with respect to the first fire was of such a character that it charged him as a matter of law, with knowledge of the danger which

he might incur. It may be reasonably assumed that respondent did not have in mind, or momentarily forgot his previous experience. It is the rule that "Forgetfulness of a known danger will not always operate to prevent recovery of damages by a person who is injured. To forget is not negligence unless it shows a want of ordinary care." (*Rosebury* v. *Edward F. Niehaus & Co.*, 166 Cal. 481-483 [137 Pac. 232].) It is stated in *Meindersee* v. *Meyers*, 188 Cal. 498-504 [205 Pac. 1078], where the foregoing holding in the Rosebury case is reiterated, that: "Generally, the question is one for the jury." In the case of *Gibson* v. *County of Mendocino*, 16 Cal. (2d) 80 [105 P. (2d) 105], plaintiff started to enter the outer door of the courthouse, and stood upon a smooth metal plate, in such a position that the door struck her when closing, and threw her down the outer steps to the pavement. The court took the position that while the plaintiff knew of the dangerous condition arising out of the smooth metal plate, and also that the door was operated by a self-closing device, her forgetfulness of such danger was excused by the fact that as she stood on the plate, and in a position of danger, she heard the fire alarm, and turned away in order to listen to a number of blasts, so that she might determine the location of the fire, she having testified that she had been "burned out once." In the instant case the jury might have found from the surrounding facts and circumstances that respondent was excused in failing to recollect his experience with the first fire. It is a matter of common knowledge that there is considerable excitement surrounding the fighting of a fire, and the jury may have found that respondent was not called upon to exercise that degree of deliberation which would be called for under ordinary circumstances. The case comes clearly within the rule laid down in *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120 [40 Pac. 108, 48 Am. St. Rep. 114, 28 L. R. A. 596] :

"It is said that, if one was aware of a fact which should have put him upon his guard, he cannot rebut the presumption of contributory negligence by showing that he momentarily forgot it. This is true as a general proposition, but, like all other rules upon this subject, it must have a reasonable construction."

(See, also, *Ramos* v. *Service Bros.*, 118 Cal. App. 432 [5 P. (2d) 623].) The interval of over four years between the two fires and the emergency character of the act in which appellant was engaged when injured, are potent factors which

may well have justified the jury in finding that the failure of respondent to have remembered the hazard connected with the first fire was not such negligence as would bar recovery. Finally, as stated by this court in *Langazo* v. *San Joaquin Light & Power Corp.*, 32 Cal. App. (2d) 678, 685 [90 P. (2d) 825]:

"It must be remembered that the burden of establishing a defense of contributory negligence is upon the defendant. Such burden has not been sustained to the degree that 'from the facts, reasonable men can draw but one inference, which inference points unerringly to the negligence of plaintiff proximately contributing to his own injury.' (*Crawford* v. *Southern Pacific R. R. Co., et al.*, 3 Cal. (2d) 427 [45 P. (2d) 183].)"

The cases relied upon by appellant are not factually comparable. In the first place they involve situations where the danger was *admittedly* known to the injured party at the time of the accident (*Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 Pac. 76]), or where the danger was *clearly apparent* (*Anderson* v. *Western Pac. R. R. Co.*, 17 Cal. App. (2d) 244 [61 P. (2d) 1209]). ■ Here, respondent testified that he did not know of the presence of the live broken wire, and the evidence shows that there was practically no visibility at all when he started to use the hose. In other words, the jury may have found that the danger was not obvious or clearly apparent. We cannot say, as a matter of law, that it was.

■ The second ground urged for reversal is error predicated upon a ruling of the trial court in refusing to permit witness Hickey to refresh her memory from a previous statement which she had made. Appellant sets out the statement and the testimony, and says that there is a variance between them. The latter is spread over some twelve pages of appellant's brief. Nowhere does appellant point out just what the alleged variance consisted of, or what particular facts are involved. It certainly is not the duty of this court to search for any inconsistencies or conflicts between the statement and the testimony. Appellant relies upon the rule stated in 27 Cal. Jur. 86, where it is said:

"When a witness fails to testify to matters previously within his recollection, or gives evidence in apparent variance with that formerly given, the party calling him may with propriety refresh his recollection by directing his attention to former statements, by reading testimony given upon a former trial or examination, or, in some cases, by reading an

information on file. And it has been stated that when attention is being directed to prior statements leading questions may be rightfully resorted to.''

As the matter is presented to us, we may, and do assume, in support of the judgment, that the trial court found no such variance, and therefore ruled as stated. ''If an appellant seeks a reversal upon such grounds, not only must he convince the reviewing court that the trial court erred, but he must go further and show that the ruling complained of was prejudicial in its effect and result.'' (*Robertson* v. *Weingart*, 91 Cal. App. 715 [267 Pac. 741].) Appellant here has failed to sustain such burden.

The judgment is affirmed.

A petition for a rehearing was denied August 1, 1942, and appellant's petition for a hearing by the Supreme Court was denied August 27, 1942.