[Civ. No. 19582. Second Dist., Div. One. June 1, 1954.]

JOSEPH LOWENTHAL et al., Appellants, v. ARTHUR E. MORTIMER, Respondent.

Joseph Lowenthal and Ruth Lowenthal, in pro. per., for Appellants.

Parker, Stanbury, Reese & McGee and Kenneth M. Smith for Respondent.

MOSK, J. pro tem.*—The plaintiff Joseph Lowenthal, who together with his wife owned and operated a cafeteria and delicatessen store, was driving his 1950 Nash automobile at a speed of 25 miles per hour in the middle westbound lane on Colorado Boulevard, between Allen and Parkwood Streets, County of Los Angeles, the evening of March 22, 1951. His wife, Ruth, was seated beside him in the front seat.

As he noticed cars in front of him slacken their speed, he removed his foot from the accelerator and prepared to come to a complete stop. He testified that he gave a hand signal indicating an intention to stop.

The defendant Arthur E. Mortimer was traveling directly behind the plaintiffs' vehicle at a speed of 25 to 27 miles per hour. He was proceeding approximately 50 feet behind the Lowenthal car. He testified that the plaintiffs' vehicle stopped suddenly, that no signal was given except the lighting up of the red taillight, that he immediately applied his brakes but was unable to avoid hitting the rear of the plaintiffs' automobile.

The jury returned a verdict for the defendant, a subsequent motion for new trial was denied, and from both the plaintiffs appeal.

It is now well established that when one motor vehicle runs into the rear of another vehicle, negligence is a question of fact and not of law. (*Turkovich* v. *Rowland,* 106 Cal.App.2d 445, 447 [235 P.2d 123] ; *Wohlenberg* v. *Malcewicz,* 56 Cal. App.2d 508 [133 P.2d 12].) It is also the province of the jury to determine the proximate cause of an accident. (*Turkovich* v. *Rowland, supra.*)

Cases involving rear-end collisions are legion. Although the contention is made often that the leader alone, or the follower alone, is guilty of negligence, in general it has been held that the case as presented by each party creates a question of fact for the jury and not a question of law for the court. (*Donahue* v. *Mazzoli,* 27 Cal.App.2d 102 [80 P.2d 743].)

The appellant relies upon *Gornstein* v. *Priver,* 64 Cal.App. 249 [221 P. 396]. The court, at page 255, there held that ''The mere fact that he does run down the vehicle ahead of him furnishes some evidence that he either was traveling at too high a rate of speed for a highway crowded with other vehicular travel or that he was following too closely the machine ahead of him. (See *O'Connor* v. *United Railroads,* 168

---

*Assigned by Chairman of Judicial Council.

Cal. 43, 47 [141 P. 809].)'' But it concluded that ''whether in any particular case the operator of the rear vehicle is negligent if he drives his machine so as to cause a collision with the one ahead depends upon all the circumstances surrounding the happening of the accident, and almost invariably presents a question of fact for the decision of the jury. . . .''

█ The reasonableness of the speed at which defendant operated his vehicle, whether plaintiff gave a hand signal indicating an intention to stop (see *Mazgedian* v. *Swift & Co.,* 22 Cal.App.2d 570 [71 P.2d 833]), whether the stop was sudden, whether defendant was driving too closely behind plaintiff's vehicle, whether defendant was inattentive, all were questions of fact.

The jury resolved those factual elements in favor of defendant. The evidence supports that finding, just as it would have supported a contrary finding.

This would be a prosaic proceeding were it not for the issue created by the calculated injection of numerous other lawsuits into testimony at the trial.

Plaintiff Ruth Lowenthal testified on direct examination that she was in the hospital for an hour after the accident and was sent home by taxi. Subsequently two additional days were spent at a hospital for spinal punctures. She did not remain away from her place of business, but set up a place to rest in the rear of the store. In July she went to bed for three weeks. She testified that after the accident she ''couldn't do anything at all beyond just helping a little bit in the store when I could.'' On cross-examination she testified that their business required a cheerful person behind the counter, that after the accident her husband was irritable, that this caused them to worry about being able to resume their business.

█ In cross-examining this plaintiff, counsel inquired first about another lawsuit tried by her in propria persona on April 26, 1951. Since the plaintiff's activities and physical limitations subsequent to the accident on March 22 were at issue, this was not an improper line of inquiry.

Thereafter counsel cross-examined plaintiff about 15 other lawsuits in which she and her husband were involved dating from February 9, 1942, to June 29, 1951. Of the 15 suits one was in 1942, one in 1946, four in 1948, four in 1949, three in 1950 and two in 1951. Substantially all were cases of a commercial nature.

There are many reported cases in this and other jurisdictions involving efforts of both plaintiffs and defendants to place before a jury evidence of past personal injury lawsuits. It is generally held that evidence of previous accidents is inadmissible in a civil action arising out of a motor vehicle accident, since such evidence is immaterial in the determination of the driver's negligence on the occasion in question. (*Hall* v. *Young,* 218 Ark. 348 [236 S.W.2d 431, 20 A.L.R.2d 1207, 1210].) The admission of such evidence is considered prejudicially injurious. (*Reid Auto Co.* v. *Gorsczya,* (Tex. Civ.App.) 144 S.W. 688.)

While this rule prevails in the overwhelming majority of jurisdictions (65 C.J.S. 1053, 1058), there are some few holding to the contrary. *McGuire* v. *Village of Caledonia,* 140 Minn. 151 [167 N.W. 425, 426, L.R.A. 1918D 943], permitted cross-examination of a claimant as to other personal injury claims he had asserted. That fraud was a defense clearly influenced the court's conclusion. Two Ohio cases hold an exception to the general rule of exclusion of previous accidents to exist when the driver has a physical defect rendering his driving unsafe. (*Bachman* v. *Ambos,* 83 Ohio App. 141 [79 N.E.2d 177]; *Hiller* v. *Shaw,* 45 Ohio App. 303 [187 N.E. 130].) A few jurisdictions permit exploration into other accidents on cross-examination after the driver volunteered on direct examination that he was a careful driver. (*Barshfield* v. *Vucklich,* 108 Kan. 761 [197 P. 205]; *Harrison* v. *Mobile Light & R. Co.,* 233 Ala. 393 [171 So. 742].)

[5a] But respondent has cited no authority, and we have found none, to justify informing the jury the history of plaintiffs' commercial litigation wholly unrelated to personal injuries. Respondent contended at the trial, and in his brief on appeal, that the "numerous lawsuits would tend to show a reason for their irritability which would not be attributable to this accident."

■ Nervousness and disturbances of the nervous system are classed as physical injuries and are recognized elements of damage. (*Taylor* v. *Pole,* 16 Cal.2d 668, 671 [107 P.2d 614]; *Dryden* v. *Continental Baking Co.,* 11 Cal.2d 33, 39 [77 P.2d 833]; *Sloane* v. *Southern Cal. Ry. Co.,* 111 Cal. 668 [44 P. 320, 32 L.R.A. 193].) ■ Expert medical testimony is not essential to establish a person's physical condition before an injury. (Blashfield Cyclopedia of Automobile Law and Practice, vol. 10, p. 30; *Republic Underwriters* v. *Howard,* (Tex. Civ.App.) 69 S.W.2d 584.)

But here we have no evidence of any kind, lay or expert, indicating nervousness of plaintiffs before the accident. Respondent offered the lawsuits to "tend to show a *reason*" for irritability, but wholly neglected to show the irritability. At the trial, counsel made his offer of proof, later permitted in evidence, to show a "type of life in which they have been involved, that would be distressing to any normal person, and would certainly leave a normal person in a state of nerves. . . ." He did not offer to, nor did he, show that these plaintiffs were in a state of nerves before the accident. Between exposure and actual contraction lies a broad chasm that cannot be spanned by mere conjecture.

If it be contended, though respondent has not done so, that the precedent lawsuits were offered to explain plaintiffs' irritability after the accident, they would clearly be too remote in the absence of some explanatory testimony. Any causal connection between litigation tried as long as nine years before the date of this accident and nervousness subsequent to the accident seems tenuous indeed.

Courts have been wary of permitting evidence of other lawsuits even for impeachment purposes. In *Grenadier* v. *Surface Transp. Corp.*, 271 App.Div. 460 [66 N.Y.S.2d 130], the defendant bus driver filed an accident report admitting two previous accidents. On cross-examination counsel elicited admissions that the driver actually had more than two prior accidents, this for the sole purpose of attacking the credibility of the witness. Said the court (p. 131 [66 N.Y.S.2d]), "Whether or not that was the object of the respondent's counsel, we think that the obvious effect of such testimony was to prejudice the minds of the jurors. . . . The extent to which disparaging questions, not relevant to the issue but bearing on the credibility of a witness, may be put upon cross-examination is discretionary with the trial court. (Cases cited.) However, in the exercise of its discretion, the court must keep such cross-examination within reasonable bounds. . . . In our view, in the circumstances of this case, such testimony was improper and prejudicial." To the same effect are the following: *Brownhill* v. *Kivlin*, 317 Mass. 168 [57 N.E.2d 539]; *Nesbit* v. *Cumberland Contracting Co.*, 196 Md. 36 [75 A.2d 339]; *Harper* v. *Dees*, 214 Ark. 111 [214 S.W.2d 788]; *Ryan* v. *International Harvester Co. of America*, 204 Minn. 177 [283 N.W. 129].

Introduction of the element of 15 other lawsuits could have had no effect other than to prejudice the jury against the plaintiffs. For litigiousness, in the eyes of most people, reflects more upon character than upon impairment of health.

A few courts have shown an inclination to admit, exceptionally, the character of a person charged with or charging a negligent act as throwing light on the probabilities of his conduct on the occasion in question. As a matter of law, however, the doctrine is maintained in very few jurisdictions only, and has been expressly repudiated in many. (See Wigmore on Evidence, § 85.) California is numbered among the latter. (*Towle* v. *Pacific Improvement Co.*, 98 Cal. 342 [33 P. 207]; *Carr* v. *Stern*, 17 Cal.App. 397 [120 P. 35]; *Howland* v. *Oakland, etc. Ry. Co.*, 115 Cal. 487 [47 P. 255].)

It is interesting to note that in *Howland* the plaintiff's counsel, under the guise of explaining plaintiff's nervousness on the stand, introduced evidence of another accident involving the defendant railroad. This, said the court (p. 494) "was improper as bringing specially and prominently into the case a fact in itself wholly irrelevant to the issues, which, in view of the nature of the action, was well calculated to excite the sympathy of the jury . . ."

Appeals to emotion are to be avoided in courts of law if at all possible, whether directed to sympathy as in *Howland* or to antipathy as here.

In interrogating plaintiff concerning the 15 lawsuits, respondent's counsel used some inflammatory descriptive phrases. He referred to fraud in several instances, without making it clear whether appellants charged it or were charged with it. And with regard to still another lawsuit, not otherwise identified, there was this exchange:

"Q. Didn't you run into some parked cars once while you were driving a car? A. I ran into some parked cars? Not I.

"Q. Didn't you have some litigation in the Monrovia court over that accident? A. There was some litigation, but there was no proof that I had run into it. and I didn't.

"Q. There was some testimony, wasn't there, by some little girls who saw it?"

At this point an objection was sustained and the jury instructed to disregard the query. Nevertheless the jury

heard the foregoing, and it undoubtedly added cumulatively to the hostility ordinarily felt against one who constantly requires services of a court of law for the adjustment of life's problems.

 The cross-examiner must not inject insinuations into the case for the purpose of appealing to prejudices, or go outside of the issues of the case. (Blashfield Cyclopedia of Automobile Law and Practice, *supra*, page 41.) Note the case of *Hill* v. *Ross*, 198 Minn. 199 [269 N.W. 396], in which reference in cross-examination of a doctor, to a lumbosacral sprain as "a litigation back" caused a reversal.

The principal involved here is not concealment of facts from the jury, but confinement to the issues involved in this one lawsuit. Neither the character, good or bad, of the plaintiffs nor their objectionable traits, if any, should be permitted to confuse the questions of liability and damages.

Illustrative of collateral issues that might be raised if the 15 other lawsuits could properly be introduced is an exposition to a lay jury of the nature of plaintiffs' business operations and the lease problems, collection difficulties, and contract interpretations of a commercial enterprise that result in litigation. To negative any inference of unreasonable contentiousness, plaintiffs would be entitled to attempt an adequate explanation.

If we were to hold that a businessman is to be penalized in a personal injury case because of precedent commercial litigation, we would be jeopardizing the rights of a trial lawyer who may be injured in an accident, or a physician who may have sued to collect on accounts, or insurance company and title company and collection agency representatives and the numerous others who are frequently subjected to the vagaries of legal proceedings.

 Then, too, were other lawsuits allowed in evidence to show a reason for irritability, we would be flinging the gates wide open to discussion of the 1,001 other environmental aggravations that contribute to human nervousness in this modern complex society. That may come about in our jurisprudence some day, but when it does, trials will be interminable.

Since the evidence here would support verdicts for either plaintiffs or defendant, it is possible that the injection of other litigation into this case was not prejudicial. However, the contrary appears more likely.

The judgment is therefore reversed and the cause remanded for a new trial. The purported appeal from the order denying motion for new trial is dismissed.

White, P. J., and Doran, J., concurred.

· Respondent's petition for a hearing by the Supreme Court was denied July 28, 1954. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.