[Civ. No. 4997.   Fourth Dist.   Apr. 6, 1956.]

PEARL SIMPSON et al., Appellants, v. J. WESLEY RANDOLPH, Respondent.

Myrtle M. Burgess and Richard E. Johnson for Appellants.

Crowe, Mitchell & Hurlbutt for Respondent.

GRIFFIN, J.—Plaintiffs and appellants, husband and wife, brought this action against defendant and respondent to recover for personal injuries alleged to have been sustained by the wife on April 4, 1953, by catching her shoe in a door latch when she, as a customer, was leaving defendant's small grocery store, causing her to fall and injure her back. A jury verdict was returned in favor of defendant and plaintiffs appeal.

The store, that week, was left in charge of defendant's son. Mrs. Simpson made a purchase of a box of groceries. The exit and entrance to the store had two swinging doors about 2½ feet wide with special hinges that would automatically close the doors after they were opened in either direction. Defendant had installed a lock-latch about six inches long which was screwed to the bottom of the right-hand exit door. It protruded about one-half to three-fourths inches therefrom and had a knob on the top. By pushing down on the latch the bar protruded into the door sill and locked it.

It is the testimony of Mrs. Simpson that she approached the closed swinging door, opened it, and as she stepped forward the back of her right casual, low-heel type shoe caught the door latch, tearing the shoe down the back seam and she fell forward flat on the box of groceries. Plaintiffs' niece corroborated this story. She continued on to her car without informing anyone at the store of her fall and went home. Plaintiff Mr. Simpson testified that two days after the accident he had a conversation with defendant's son and told him about it. He claimed the son told him something about the son's previous experience with the same lock. Objection was made to the admissibility of this testimony and it was sustained. An offer of proof was made indicating that the son told him he had prior knowledge of the condi-

tion of the lock in that he himself had, prior to the accident, torn the cuff of his trousers on the lock in question.

Plaintiffs claim that the proffered evidence was admissible on the theory that defendant's principal was chargeable with notice to his agent, which notice was received while the agent was acting within the scope of his authority; that this evidence showed prior knowledge of a dangerous condition and of defendant's failure to remedy it, citing such authority as *Westman* v. *Clifton's Brookdale, Inc.*, 89 Cal.App.2d 307 [200 P.2d 814]; and *Dressel* v. *Parr Cement Co.*, 80 Cal.App. 2d 536, 540 [181 P.2d 962].

It is defendant's position that the son was only in charge of sales and of stock in the store on the days in question and his authority was so limited; that he had no authority to make repairs in the building had any repairs been needed; that since the son was not called as a witness at this trial by plaintiffs, this evidence was hearsay and inadmissible against defendant for the purpose of proving previous similar accidents; and that there was no evidence that the claimed previous catching of the son's trouser-cuff on the catch was made under the same or similar circumstances so as to charge defendant with any notice of its claimed dangerous condition.

It may be fairly said that plaintiffs established at least a prima facie showing of the son's agency on the day of the accident and at the time the complaint was made. There is some evidence that defendant returned to the store on or about the day the complaint was made and it may have been a factual question as to whether defendant was in charge at that time. At least, for the purpose of receiving the complaint the evidence would be sufficient to show an authorized agency of the son in this respect. There is no showing that the son was defendant's agent at the time it is claimed he said he tore his trouser-cuff on the clasp. There was no time fixed as to when this was supposed to have happened. Even the testimony of the son may not have been admissible, on this theory, if it were not shown it was under similar circumstances. The condition of the latch, at the time of the alleged accident, was known to defendant personally because he installed it over one year prior to that date. There apparently was no change in that condition until one of the employees of defendant bumped into the door with a handtruck and loosened the two top screws to some extent. Plaintiffs offered in evidence photographs of this latter condition, which were taken about two or three weeks before

trial, i.e., about 18 months after the accident and after the store had been subleased to others on October 31, 1953. Objection was made to their introduction in evidence because of the time limitation and the testimony about the loosening of the two upper screws in the latch after that time. Thereafter Jack Simpson testified the photographs correctly portrayed the conditions as they existed on August 4th, 1953, and the photographs were received in evidence. The trial court was justified in believing the proffered statements of the son to the effect that he had caught the cuff of his trousers on this latch on a previous occasion. Because of the fact that there was no offer of proof that it was done under similar conditions as they existed at the time of the plaintiff's claimed injuries, it could not be determined from said offer of proof when this occurred in order that the defendant would be bound by the declaration. (19 Cal.Jur.2d 184, § 433; *Hollander* v. *Wilson Estate Co.*, 214 Cal. 582, 586 [7 P.2d 177].) Plaintiff Mrs. Simpson had been dealing with this particular store and using this particular means of egress and ingress for over two years prior to the accident and was familiar with the premises. Defendant was likewise familiar with them until they were subleased by him.

We therefore conclude that the trial court did not commit prejudicial error in excluding the proffered testimony of plaintiff Jack Simpson in reference to his supposed conversation with the defendant's son.

Next it is claimed that the trial court erred in refusing to permit certain cross-examination of defendant as to claimed former inconsistent statements in his deposition. The facts pertain to whether or not defendant's son was in charge of defendant's market on August 6th, the date of the alleged conversation with the son. Defendant testified he returned about that date. Plaintiffs' counsel cross-examined him as to certain claimed inconsistencies in his testimony in respect to the date when he did return. Counsel for plaintiffs was successful in reading to defendant a portion of his deposition relating to the time he first learned of the supposed accident at the store and the record of what transpired at that time. The court indicated that the testimony therein given was the same as the testimony given at the trial. Counsel for plaintiffs insisted that they were not, and that he was not proceeding under impeachment but under cross-examination, and claimed the right to read each question and answer in defendant's deposition and ask him if he did

not so testify when his deposition was taken. The trial court properly refused this procedure and suggested to counsel that he could offer the entire deposition in evidence. He refused and then proceeded to further cross-examine defendant. It is apparently the claim of plaintiffs' counsel that he had the right to ask the same questions propounded in the deposition and to have the defendant state whether or not he made those particular answers even though it did not appear to be impeaching. We see no error in thus limiting the cross-examination. See *White* v. *White*, 82 Cal. 427, 450 [23 P. 276, 7 L.R.A. 799], where the court said:

"The mode of cross-examination was objectionable. It consumed time in doing what was utterly useless in asking the questions as above stated. The court has the power, and should have it, to control the mode of examination of a witness, provided it does not trench on the rights of a party."

It is next argued that plaintiffs were unduly curtailed in their cross-examination of the defendant because, in their attempts to demonstrate his lack of proficiency as a blackboard artist, they were denied the right to refresh his recollection with a photograph which the trial court had considered inadmissible because it did not correctly portray the appearance of the latch as it existed at the entrance to the respondent's grocery store at the time the appellant Mrs. Simpson was supposed to have been injured.

At the beginning of plaintiffs' case they called defendant as an adverse witness, under section 2055 of the Code of Civil Procedure. In the course of cross-examination he testified that certain photographs, including one then marked for identification, did not correctly portray the appearance of the entrance to his store on August 4, 1953, because, among other things, the latch in question had been pulled or bent out from its normal position. On the basis of such testimony the trial court refused to receive the photographs in evidence, in the absence of some further showing as to their admissibility. Defendant's counsel then requested defendant to draw a picture of the latch in question on the blackboard. He protested on account of his inability as an artist but sought to comply with the request and made two drawings. Plaintiffs' counsel then sought to refresh his recollection from the photograph marked for identification. Objection was made to this photograph for the purpose of refreshing the witness's recollection, and the trial court ruled that it could not be employed for this purpose. We see no apparent objection to the court's

ruling. Thereafter the photograph was received in evidence. (*Shaver* v. *United Parcel Service*, 90 Cal.App. 764, 771 [266 P. 606] ; *Matteoni* v. *Pacific Gas & Elec. Co.*, 53 Cal.App.2d 260, 266 [127 P.2d 574].)

It is next argued that the *rights* of the defendant were overemphasized as distinguished from his *duties* in the court's instructions to the jury. They do not maintain that there is any misstatement of law contained in them. We see no merit to the contention. It is true that a great number of instructions were requested both by plaintiffs and by defendant, which the court refused to give, principally on the ground that they were covered by other instructions. An examination of the instructions given sufficiently cover those that were refused, and it does not affirmatively appear that any instruction given was overemphasized. ■ As long as the instructions cover the issues involved and correctly and fully state the law, the fact that either party would prefer that they be otherwise expressed or expressed in a repetitious manner or different language is immaterial. (*Wilson* v. *Kopp*, 114 Cal.App.2d 198, 208 [250 P.2d 166].)

■ Finally, it is claimed that the court erred in refusing to give plaintiffs' proffered instruction to the effect that if it found that Mrs. Simpson was injured through any negligence on the part of the defendant and that if she used ordinary care in the selection of and the submission to any treatment by chiropractors, physicians or surgeons for the purpose of treating her injuries, if any, it will be no defense to show that the chiropractors, physicians or surgeons thus selected by the plaintiff were unskillful or failed to give her the best or proper treatment provided she complied with the directions and submitted to the treatment supplied by such chiropractors, physicians or surgeons.

It does appear from the evidence that Mrs. Simpson, shortly prior to her claimed fall at the defendant's store, had undergone a serious major operation; that about two days after her alleged fall she went to see her own family physician, and for a period of approximately 18 months she was treated by a number of eminent physicians and surgeons and chiropractors, none of whom was called to testify as to her condition when she was treated by him or for what he was treating her. The only medical testimony offered on her behalf was the testimony of a doctor who did not see her until 18 months after her alleged fall. His examination disclosed that she did have an

arthritic condition and was then suffering from a ruptured intervertebral disc. He testified that her condition was the result of normal physical changes and that her ruptured disc could have been caused by lifting some heavy object or by twisting her back in a fall. It is true that counsel for defendant, in cross-examining this doctor, asked if a "popping" of the back by manipulation, such as is done by a chiropractor, "could conceivably do that very damage to a disc" and he answered "Yes it could if it is not properly carried out." It is plaintiffs' contention that under the evidence they were entitled to this instruction.

It is defendant's position that he, at no time, claimed that Mrs. Simpson demonstrated any want of ordinary care in her selection of the various men who treated her, or contended that any of the treatment accorded her was unsuccessful or other than the best and proper treatment for her then condition; that accordingly, her selection of physicians and chiropractors and the skill with which she was treated by them was not an issue in the cause and that the trial court properly refused to instruct the jury on said issue. The trial court was justified in refusing said instruction.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.