[Civ. No. 16946. First Dist., Div. One. Dec. 17, 1956.]

LESTER H. FLETCHER, Appellant, v. CURTIS AARON PIERCEALL, Respondent.

Robert Cramer and Harry Gonick for Appellant.

Berry, Davis & Channell for Respondent.

PETERS, P. J.—Plaintiff brought this action against defendant Pierceall to recover damages for personal injuries sustained when the car in which plaintiff was riding as a guest was hit from the rear by a car driven by Pierceall. The jury brought in a verdict in favor of defendant. From the judgment based on that verdict plaintiff appeals.

The accident happened on August 27, 1953, between 4 and 5 p. m. in the vicinity of where the 98th Avenue overpass crosses over the Eastshore Freeway in Oakland. The freeway runs east and west, has two traffic lanes in each direction, and down the middle of the freeway is a dirt strip. At 98th Avenue there is an overpass. East of the overpass, and continuing west of it, there is an asphalt turnout, which permits cars traveling west on the freeway to turn in an arc onto the overpass. The two cars came into collision about 40 feet east of the overpass and on the turnout lane.

The major contention of plaintiff is that the evidence of defendant demonstrates, as a matter of law, that defendant was negligent, and that his negligence was at least one of the proximate causes of the accident. Defendant admitted that he was familiar with the area and considered it one of comparative danger.

The plaintiff was riding as the guest of one Horn in a Plymouth, proceeding west on the freeway. The defendant was also proceeding west on the freeway, following the Plymouth. In his deposition, defendant testified that he was proceeding about 45 miles an hour when he first observed the Plymouth in front of him, but at the trial testified that at such point he was going 25 to 35 miles per hour. When he struck the Plymouth it was in the turnout lane and slowed down, in anticipation of stopping. Admittedly, Horn had turned into the turnout lane, intending to stop to permit one of his passengers, other than plaintiff, to get off, then intending to continue west on the freeway.

Defendant testified that he first saw the Plymouth in front of him when he, the defendant, turned into the turnout lane; that he observed that he was rapidly gaining on it; that before turning into the turnout lane he took his foot off the accelerator and placed it on the brake; that when he turned into the turnout lane the Plymouth was about 30 feet in front of him; that he thought the Plymouth was turning off the freeway preparatory to going on the overpass; that he had no idea it intended to stop; that some 65 feet after he first saw the Plymouth he saw that car's red lights go on and he immediately applied his brakes, but was unable to avoid the collision.

Admittedly, after the accident, defendant pleaded guilty to a charge of violating section 510 of the Vehicle Code, the basic speed law. He testified at the present trial that he thus pleaded guilty in ignorance of the fact that he was charged with speeding, believing he was charged simply with hitting the Plymouth.

Defendant testified that for some time before he turned off the freeway he noted that he was followed by a Buick that was weaving from side to side, as if the driver were drunk, and gradually gaining on him; that while the automobiles involved were all on the freeway there was another car between him and the Plymouth which cut off his view of the Plymouth, and of any arm signals given by Horn; that when he turned off the freeway into the turnout lane the

Buick was just opposite him and still weaving; that some 75 feet thereafter he ran into the Plymouth from the rear.

Horn, the driver of the Plymouth, testified that he pulled into the turnout lane intending to discharge one of his passengers, and that, when hit, he had his foot on the brake and his car was coming to a stop; that he had given the arm signal signifying a stop, and had slowed down from about 35 miles per hour when he left the freeway to about 10 miles per hour when he was hit; that when he heard the squeal of defendant's brakes he stepped on his own brakes hard; that the turnout was about 10 feet wide at the place of impact.

Defendant's witness O'Shea, an employee of the State Division of Highways, testified that at the time of the accident there were signs reading "No Parking at Any Time" and "Emergency Parking Only" along the freeway in the area of the accident; that two such signs were located in the vicinity of the 98th Avenue turnoff; and that the city of Oakland, by ordinance, had prohibited parking in the general area of the 98th Avenue turnoff.

As already pointed out, the jury came in with a defense verdict. Appellant contends that respondent's negligence was demonstrated by his own testimony, as a matter of law, and that the judgment, therefore, must be reversed.

Appellant has assumed a most heavy burden. The situations in which it can be said that a party was negligent and that such negligence, as a matter of law, contributed to the accident are rare. There are such cases, it is true, but they are not very frequent. Appellant places particular reliance on *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834], where a jury verdict in favor of defendant was reversed on the ground that the evidence showed, as a matter of law, that defendant was negligent and that such negligence proximately contributed to the accident. That was a case where the defendant, without legal cause, ran down the plaintiff pedestrian, who had the right-of-way. The Supreme Court held that, under the facts there involved, there was no evidence of justification for the violation of plaintiff's legal rights. Closer on their facts to the instant case are *Lowenthal* v. *Mortimer*, 125 Cal. App.2d 636 [270 P.2d 942], and *Turkovich* v. *Rowland*, 106 Cal.App.2d 445 [235 P.2d 123], in both of which the plaintiffs were riding in automobiles that stopped suddenly and the cars driven by defendants that were following them hit the cars in which the plaintiffs were riding from the rear.

In both cases the courts held that the questions as to whether the defendants were negligent and whether such negligence proximately contributed to the accident were questions of fact and not of law.

Other cases are cited by the parties. Obviously, the factual situation in one case is seldom identical with that in another. Each case must, of course, be decided on its own facts. In the instant case we think that the question as to whether defendant was negligent, and, if so, whether such negligence proximately contributed to the accident, were factual questions properly left to the jury.

■ Appellant next complains of the failure of the trial court to give his proffered instruction to the effect that he was entitled to a verdict if respondent was negligent and such negligence was found to be a proximate cause of the accident even though the jury also found "that the operator of the car in which the plaintiff was riding was also negligent, because the negligence of said operator is not imputed to the plaintiff and would not bar a verdict in his favor." This instruction, undoubtedly, stated a correct principle of law, and it is equally clear that appellant was entitled to have the jury informed that he was entitled to recover if respondent was negligent and such negligence contributed to the accident, even though the jury also found the driver of appellant's car was also negligent and such negligence also contributed to the accident. (*Krupp* v. *Los Angeles Ry. Corp.*, 57 Cal.App.2d 695 [135 P.2d 424]; *Lund* v. *Pacific Electric Ry. Co.*, 25 Cal.2d 287 [153 P.2d 705].) Thus, it would have been quite proper if the trial court had given the proffered instruction. But that is not the question here presented. ■ The question is whether or not the jury was told that the negligence of Horn, if any, would not bar a judgment against respondent, if the jury found that respondent also was negligent. If so, the fact that this was not done in the language offered by appellant would, of course, be immaterial. In considering this question it is the law that the giving of a general instruction which simply covers the subject in an abstract way does not justify the refusal of a requested specific instruction. (*Barnett* v. *Garrison*, 93 Cal.App.2d 553 [209 P.2d 426].)

In the instant case we think that the jury was told, although not in the language desired by appellant, that the negligence of Horn was not imputed to appellant, and that appellant was entitled to a verdict against respondent if neg-

ligence on his part proximately caused, concurred in, or contributed to the accident. The jury was also properly told that appellant was not entitled to recover if Horn's negligence was found to be the sole proximate cause of the accident.

The jury was instructed that, in order to impose liability on respondent, "his negligence must have been *a* proximate cause" of appellant's injury. Proximate cause was then properly defined and the jury told that such cause "is *an* efficient cause—one that necessarily sets in operation the factors that accomplish the injury." Then, immediately thereafter, the jury was told that the law recognizes more than one proximate cause, and that the "acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such case each of the participating acts or omissions is regarded in law as *a* proximate cause." Then the court properly instructed on the legal effect of the violation of provisions of the Vehicle Code, read certain pertinent sections, and concluded this phase of its instructions with the statement that "However, in this action, a violation of law is of no consequence unless it was a proximate cause of, or contributed in some degree as a proximate cause to, an injury found by you to have been suffered by the plaintiff."

After some general instructions the jury was told that "If you believe from the evidence that negligence, if any, on the part of John Horn constituted the sole proximate cause of [appellant's] injury, *without concurring fault on the part of* [*respondent*] *Curtis Pierceall*, then, and in such event, [respondent] Pierceall is not liable herein." Then the jury was directly instructed that if it was found that respondent was negligent and "that such negligence was a *proximate cause* of" the accident a verdict should be brought in in favor of appellant. Then the converse of that instruction was given, that is, that if it should be found that respondent was not negligent or that his negligence, if any, "was not *a* proximate cause" of the accident, then a verdict for respondent should be returned.

The situation thus presented is quite similar to that involved in *Lund* v. *Pacific Electric Ry. Co.*, 25 Cal.2d 287 [153 P.2d 705]. In that case passengers riding in a car sued the driver of a car that ran into them. Defendant's defense, which, unlike the present case was expressly pleaded, was that the accident was caused solely by the negligence of the plaintiff's driver. As in the instant case no express instruction was given to the effect that the negligence of plaintiff's

driver was not to be imputed to plaintiff. The Supreme Court was of the opinion that such an instruction should have been given, but held that the failure to give it was not prejudicial error. After summarizing the given instructions, the court concluded that the instructions taken as a whole were not prejudicial because, when so considered, they negatived the theory that the negligence of plaintiffs' driver could be imputed to the plaintiffs. The instructions there involved were very similar to those in the instant case, and, as in that case, it must be held that the required subject matter was adequately covered. This being so, there was no prejudicial error in the failure to give the specific instruction requested by appellant.

The other claimed errors in the instructions do not require discussion. Any minor errors there appearing could not possibly have been prejudicial.

The last major contention of appellant is that the trial court erred in denying the motion for a new trial on the ground of surprise and newly-discovered evidence. As already pointed out, Jerry O'Shea, district traffic engineer for the State Division of Highways, testified as an expert for respondent. He testified that on the day of the accident the freeway where the accident occurred was signposted with ''No Parking at Anytime,'' and ''Emergency Parking Only'' signs, and that the city of Oakland had passed an ordinance prohibiting freeway parking in the area in question. On motion for a new trial the witness averred that ''on August 27, 1953, [the date of the accident] there were no signs posted on said portion of the Eastshore Freeway restricting or affecting parking . . . that I have been able to find no special order or regulation, nor do I know of any special order or regulation, which restricted or affected parking on said portion of the Eastshore Freeway as of August 27, 1953.''

Thus, quite apparently, this witness discovered, after he had testified, that the ordinance and no parking regulations were not in effect on the date of the accident and that the area was not then signposted. Appellant claims that at the trial he was surprised by O'Shea's testimony, and that, considering the official status of O'Shea, no reasonable man could have doubted the testimony or would have challenged it. Thus, at the trial, he made no effort to refute such testimony. Admittedly, appellant made no claim of surprise at the trial, nor did he ask for a continuance to check the correctness of such testimony. Admittedly, some time after the accident,

appellant's counsel took pictures of the scene of the accident and such pictures showed no signs in the area. Appellant states, in his closing brief, that "they were convinced that their photographs taken much later than the day of the accident were in error."

The question is, was the court required, as a matter of law, to grant the new trial on O'Shea's affidavit? In deciding this question cases affirming an order granting a new trial, such as *Celli* v. *French,* 107 Cal.App.2d 599 [237 P.2d 536], cited by appellant, are not in point. We are interested only in cases where the motion was made on the grounds here involved and was denied, and the appellate court reversed. We have been referred to no such cases. On the other hand, in *Kauffman* v. *De Mutiis,* 31 Cal.2d 429 [189 P.2d 271], the Supreme Court reversed an order granting a new trial on the ground of surprise. The court there quoted authorities to the effect that "the right to a new trial on the ground of surprise is waived if, when the surprise is discovered, it is not made known to the court, and no motion is made for a mistrial or continuance of the cause." (31 Cal.2d at p. 432.)

In addition, it must be remembered that the statutory grounds are "accident or surprise, which ordinary prudence could not have guarded against" (Code Civ. Proc., § 657, subd. 3), and "newly discovered evidence" which the moving party "could not, with reasonable diligence, have discovered and produced at the trial." (Code Civ. Proc., § 657, subd. 4.) From a very early date—1866—it has been held that surprise, as a ground for a motion for a new trial, should be looked on with "suspicion." (*Schellhous* v. *Ball,* 29 Cal. 605.) As pointed out in 3 Witkin on California Procedure, page 2057, a motion on this ground "is seldom successful" because the moving party to be entitled to a granting of the motion must make a showing of injury, a showing of diligence, and a showing that he did not unduly delay seeking redress. Under subdivision 4 of the section a motion, to be successful, requires the evidence not only to be newly discovered but that, had "strict diligence" been used, it would not have been discovered sooner.

It is quite apparent that appellant has not met this heavy burden so as to require the reversal of the discretionary order of the trial judge denying the motion for a new trial. Reasonable diligence would seem to have required that the attorney, before trial, should have investigated to determine

whether the highway was or was not posted. If it be held that such diligence was here shown by the taking of pictures showing no signs in the area, when O'Shea testified that such signs in fact were there, the pictures should have raised sufficient doubt so that counsel should then have preserved his legal rights by claiming surprise and asking for a continuance. This he did not do, claiming that O'Shea's testimony made him believe that his "photographs . . . were in error." Thus, it does not appear as a matter of law that appellant's counsel exercised due diligence. That being so, the discretionary order of the trial judge denying the motion cannot be disturbed.

No reference has been made to the counteraffidavits filed by respondent on this issue because they were filed later than the ten-day period fixed by section 659a of the Code of Civil Procedure. Assuming that they were improperly considered by the trial court (although the record does not show the appellant at any time objected), no prejudice was suffered by appellant because an examination of the counteraffidavits shows that they contained nothing additional to what the trial judge already knew.

The other points raised do not require discussion.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 16, 1957, and appellant's petition for a hearing by the Supreme Court was denied February 13, 1957.