[Civ. No. 6320.   Fourth Dist.   Dec. 21, 1960.]

SPEDO J. DEMANGOS et al., Appellants, v. ROBERT MONCUR CANNON et al., Respondents.

Robert H. Lund and Samuel B. Taylor, Jr., for Appellants.

Carlos Contreras, in pro. per., Jacobs, Jacobs, Hayden & Nelson, Robert H. Jacobs, Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, William B. Harmon, Spray, Gould & Bowers and Daniel O. Howard for Respondents.

SHEPARD, J.—This is an action for damages on account of a rear-end collision in which five different cars were participants. Trial by jury resulted in a verdict for all defendants. Plaintiffs appeal from the judgment entered pursuant to the verdict.

The facts as shown by the record are as follows: In clear weather February 7, 1958, at about 5:30 p.m., the five cars here involved were traveling northerly in the inner lane next to the double white line on the Santa Ana Freeway (U.S. Highway No. 101), in Orange County, near Orange-thorpe Avenue, at a point near which highway construction was in progress. It was dusk, just after sunset, but at that stage of light where the headlights of some cars were on and some were not. There were two north and two southbound lanes. Traffic was heavy and vehicles were also in the other northbound lane. The estimates of speed given by the occupants of each vehicle here involved range from 10 to 15 miles per hour up to the high figure of 40 miles per hour which was given by Demangos.

Of the five vehicles here referred to, that of defendant Contreras was in front; defendant Swanner's was second; plaintiffs Demangos' car was third, being driven by plaintiff Spedo J. Demangos with Helen Demangos as a passenger; defendant McCarthy's was fourth; and defendant Cannon's was fifth. Contreras stopped his car because of a line of cars

in front of him. His lights were on. He was fully stopped when he was struck from behind by Swanner's car. Swanner had stopped about 2 feet behind Contreras. Demangos estimates his speed at 40 miles per hour, but claims that he was following at the same speed as the other cars. As Demangos noticed the Swanner car stopping, he claimed that he applied his brakes as hard as he could, and stopped 2 feet short of Swanner's car. However, there was other evidence from which it could have been inferred that Demangos did, in fact, strike the Swanner car a severe blow before Demangos' car was struck from behind by McCarthy. Cannon, seeing the sudden stop of McCarthy, attempted to swerve into the outer lane, but apparently his brakes locked and he swung into the side of the McCarthy car. The only skid marks found by the officers that could be tied to a car were those of the Cannon car. There were many conflicts as to the speed at which the various cars were traveling. This is also true as to who struck first and as to the severity of the different impacts.

Trial was on the issue of liability alone.

## INSTRUCTIONS

Appellants do not contend that any of the instructions given were erroneous. They do contend that the court erred in failing to give two instructions requested by Helen Demangos. These two instructions, in substance, would have directed the jury, *inter alia,* that contributory negligence, if any, of Spedo J. Demangos (driver of the car in which Helen was riding) could not be imputed to Helen, and that Helen would not be barred from recovery by contributory negligence on the part of Spedo. As was said in *Fletcher* v. *Pierceall,* 146 Cal.App.2d 859, 863 [2] [304 P.2d 770]: "In considering this question it is the law that the giving of a general instruction which simply covers the subject in an abstract way does not justify the refusal of a requested specific instruction."

It is unquestionably the duty of the court to adequately instruct on the law of the case and to give requested instructions on each legal problem where such requested instruction is not adequately covered by the instructions already given. (*Stickel* v. *Durfee,* 88 Cal.App.2d 402, 406 [4] [199 P.2d 16]; *Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 352 [6] [282 P.2d 23, 51 A.L.R.2d 107].)

Respondents do not contend that the two instructions, as worded, were incorrect. They do assert, however, that such

instructions were unnecessary and that the issues were adequately covered by other instructions. █ Where an error in instructions is charged, the appellate court will read the instructions as a whole to determine whether or not the jury was fully and fairly instructed, and will not dissect a single instruction without regard to what was said in the other instructions. (*Buck* v. *Standard Oil Co.*, 157 Cal.App.2d 230, 241 [321 P.2d 67]; *Holibaugh* v. *Ito*, 21 Cal.App.2d 480, 484 [2] [69 P.2d 871].) █ If instructions do fully and fairly cover all the issues, a judgment will not be reversed for failure to give an instruction in appellant's own special language which is already fairly covered in the other instructions. (*Lund* v. *Pacific Electric Ry. Co.*, 25 Cal.2d 287, 294 [4-3b] [153 P.2d 705].) █ As was said in *Estate of Woehr*, 166 Cal.App.2d 4, 19 [29] [332 P.2d 818]: "A party is not entitled to have the jury instructed in any particular language as long as the court correctly announces the substance of the law applicable to the case." (See also *Pandell* v. *Hischier*, 166 Cal.App.2d 693, 695 [2] [333 P.2d 762]; *Simpson* v. *Randolph*, 140 Cal.App.2d 571, 577 [5] [295 P.2d 528].)

Thus, it is clear that even assuming the requested instruction is correct, there is still no prejudicial error if the instructions actually given do fairly and reasonably cover the law required to be applied by the jury. (*Lund* v. *Pacific Electric Ry. Co.*, supra; *Fletcher* v. *Pierceall*, supra, pp. 864-865 [1b].)

█ Considering then, in the light of these rules, the instructions in the case at bar, the following appears from the record: On the subject here under discussion, the court first gave plaintiffs' instruction generally outlining the issues as to Spedo J. Demangos. Helen Demangos was not mentioned therein. The first instruction directly bearing on the legal position of Helen Demangos as to contributory negligence was plaintiffs' instruction 52, in which the court explained that the case of each plaintiff was separate from and independent of the other, that they were joined solely because their claims were involved in the same accident, that their rights are separate and not joined, that the instructions given apply to each plaintiff unless otherwise stated, but that each plaintiff's case will be determined separately as though in the trial of separate actions. The closing paragraph of this instruction reads as follows:

"In this connection, however, there is one exception to

be noted. The defense of contributory negligence is submitted to you as against only the plaintiff, *Spedo Demangos,* and, therefore, instructions concerning the subject of contributory negligence apply only as between that plaintiff and the defendant.''

Next follows an instruction directing separate consideration of each defendant; definitions and explanations of negligence; then follows:

''A plaintiff who was not guilty of contributory negligence and who was injured as a proximate result of some negligent conduct on the part of a defendant is entitled to recover from such defendant compensation for such injury.''

Then follows a definition of ordinary care; definition and explanation of the abstract rules of contributory negligence and burden of proof thereon; proximate cause defined and explained; the effect of negligent acts of two or more persons proximately contributing to the injury of another; results of a finding that plaintiff was injured as the proximate result of defendant's negligence. Then follows a delineation of the issues for the case of Helen Demangos in the following language:

''The issues to be determined by you in the case of HELEN DEMANGOS are these:

''Were the defendants negligent? If you answer that question in the negative, as to any defendant, you will return a verdict for that defendant only. If you answer it in the affirmative, as to any defendant, you have a second issue to determine as to that defendant, namely:

''Was that negligence a proximate cause of any injury to this plaintiff? If you answer that question in the negative, this plaintiff is not entitled to recover, but if you answer it in the affirmative, you will return a verdict in her favor.''

Finally we have a delineation of the issues in the case of Spedo J. Demangos and a large number of instructions on rules of the road and drivers' duties, and on verdict procedure.

After the matter had been submitted to the jury, the jury returned for further instructions and a juror asked a question which obviously referred to Spedo J. Demangos only. The court at this point, since there were only two plaintiffs, apparently decided to clearly pin down the distinguishing characteristics of the issues as to each of the plaintiffs, and again read the instructions on the issues as to Helen Demangos and also as to Spedo Demangos. At the end of the instruction as to Helen Demangos, the court orally and outside of

the instruction, reemphasized the point that Helen Demangos was not barred by contributory negligence by saying: "Now, you will note that there is no contributory negligence charged to Mrs. Demangos." A question was finally asked about whether or not Mrs. Demangos was a coowner of the vehicle in which she was riding. The court answered: "The evidence is silent on that point, so disregard it entirely."

The record shows that the subject of "imputed negligence" was never mentioned in the presence of the jury at any time, either in the instructions or during the trial. The only reason that any instruction on imputed negligence might have been desirable would have been if the court had given plaintiffs' instruction Number 103.1 in its entirety. That instruction as proposed by plaintiffs, started by referring to the defense of contributory negligence of a plaintiff, and then included the words: "or negligence on the part of someone which, under the law, is imputed to that element," and at a second point, "or one to whom such negligence is imputed under the law." However, the court was sufficiently alert to catch the impropriety of these words in the case at bar and very carefully deleted them from the instructions so that they were never given to the jury. This perspicacity of the trial judge saved plaintiffs' attorney from his own error so that no reference to imputed negligence could confuse the jury.

Thus, we find that the jury was affirmatively and unequivocally instructed on no less than four different occasions that the definition of contributory negligence could not be applied to Helen Demangos. On at least two other occasions they were indirectly and abstractedly told the same thing. Never at any time was anything said about "imputed negligence," nor was anything said from which the application of "imputed negligence" might even be inferred to apply to Helen.

Furthermore, in the record of the discourse during the time the jurors asked for further instructions, there does not appear to be any suggestion from plaintiffs' counsel that he then thought the jury required further or different instructions on the subject. Imputed negligence is not itself a separate form of negligence. It is merely a legal method by which responsibility for the negligence of one person may be imposed upon another under certain conditions.

From a reading of the entire record, it appears that the jury was fully and fairly instructed that contributory negligence could not be applied to Helen Demangos.

The authorities cited by plaintiffs in which a reversal was had for failure to give the proposed instruction complained of all involved either erroneous instructions or complete failure of the court to inform the jury that plaintiff involved could not be charged with contributory negligence. *Britton* v. *Gunderson*, 160 Cal.App.2d 66 [324 P.2d 938], involved an order granting a motion for a new trial where there were erroneous instructions as well as an apparently complete failure of the trial court to inform the jury that contributory negligence did not apply. In *Krupp* v. *Los Angeles Ry. Corp.*, 57 Cal.App.2d 695 [135 P.2d 424], the sole plaintiff was a guest; the trial court gave erroneous instructions from which the jury could have inferred that contributory negligence of the driver would attach to the guest; and further failed to clearly make known to the jury that contributory negligence could not be used against a guest. In *Renowden* v. *Pacific Electric Ry. Co.*, 73 Cal.App. 383 [238 P. 785], substantially the same situation obtained. In *Hoover* v. *Striegel*, 99 Cal.App.2d 833 [222 P.2d 963], there was an erroneous instruction that the driver's negligence could be imputed to the guest, and there were other erroneous instructions. In *Van Noy* v. *Frank*, 10 Cal.App.2d 423 [51 P.2d 1166], the court again not only failed to explain that contributory negligence did not apply to the plaintiff guest, but actually gave an instruction clearly inferring that it did apply.

Under the facts and instructions here at bar, where the court so clearly and repeatedly directed the jury that contributory negligence could not be applied to Helen Demangos, it would seem that the injection of the term "imputed negligence" would merely have the effect of giving to the jury an unnecessary additional legal phrase to try to remember and think about, with possible resultant confusion. We think the instructions were ample, and that prejudicial error is not shown.

### MOTION FOR NEW TRIAL

Plaintiffs next contend that the trial court erred in refusing to grant a new trial. The first count of this contention is on account of the instructions. This point we have already fully discussed.

The second count of the contention is that the evidence was insufficient to justify the verdict and judgment. ■ The rule regarding the position of the appellate court on an order of the trial court responsive to a motion for a new trial on the ground of insufficiency of the evidence is well outlined by our

632

Supreme Court in *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [1-3] [163 P.2d 689], where the court said:

"In passing upon a motion for a new trial based upon the insufficiency of the evidence, it is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence [citations]. ▮ In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial [citation], and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried [citation]. ▮ It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court."

(See also *McCoy* v. *Yellow Cab Co.*, 88 Cal.App.2d 47, 57 [1] [198 P.2d 371]; *Tice* v. *Kaiser Co., Inc.*, 102 Cal.App.2d 44, 46 [2-3] [226 P.2d 624].)

▮ In the absence of an application of the rule of res ipsa loquitur without adequate explanation (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 688 [7] [268 P.2d 1041]; *Cartmill* v. *Arden Farms Co.*, 83 Cal.App.2d 787, 789 [1] [189 P.2d 739]; *Merry* v. *Knudsen Creamery Co.*, 94 Cal.App.2d 715, 721 [3] [211 P.2d 905]), the general rule is that when a motor vehicle collides with the rear of another, negligence and proximate cause are questions of fact for the jury and for the court on a motion for a new trial. (*Lowenthal* v. *Mortimer*, 125 Cal.App.2d 636, 638 [1-2] [270 P.2d 942]; *Davis* v. *Ewen*, 148 Cal.App.2d 410, 413 [306 P.2d 908].)

▮ In the case at bar, the parties were traveling apparently in a long line of cars. When the traffic officer asked Spedo what happened, he replied: "I ran into the guy in front." From this testimony and from the testimony of the Swanners that the first impact of the Demangos car on the rear of their car was the severe one, and that the second was lighter, and from all the other circumstances, the jury could have believed that Spedo Demangos' car was the first of all the cars to strike another and that it struck hard. There were several possible views the jury might, consistent with the evidence, have taken to reach their verdict. A single illustration is sufficient for our purposes. The character of that impact, coupled with Demangos' estimate of speed at 40 miles per hour, may well have convinced the jury that the fault of that

impact rested on Demangos and that it was the only proximate cause of the injuries to Helen Demangos. They may well have believed that the lighter impacts which followed caused no personal injuries to Helen Demangos. ▮▮▮ As was said by our Supreme Court in *Horton* v. *Kyburz,* 53 Cal.2d 59, 72 [12] [346 P.2d 399]:

"While on the record it may seem to some of us that, were we triers of fact, we might have reached findings differing in some respect from those declared by the trial judge, we recognize that we did not see and hear the witnesses and, hence, on conflicting evidence have neither right nor power to disagree with the trier of fact."

The trial judge heard and saw the witnesses. He apparently saw no reason to disagree with the jury.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.