[Civ. No. 17444.   Second Dist., Div. Three.   Oct. 16, 1950.]

THOMAS FRED  HOOVER et al., Appellants, v. ROBERT
E. STRIEGEL et al., Respondents.

Albert C. Garber and Edward Levin for Appellants.

Jones, Thompson & Kelly, Reginald I. Bauder, and Henry F. Walker for Respondents.

VALLÉE, J.—Appeal by plaintiffs from judgments for defendants entered on verdicts of a jury in an action for damages for personal injuries.

The accident occurred about 8 p. m. on June 25, 1946, at the intersection of Ferndale Avenue and Black Oak Drive in Los Angeles. The sun set at 7:08 p. m. that day. Plaintiff Hoover was driving his motorcycle south on Ferndale Avenue. Plaintiff Marshall was his guest-passenger. Defendant Robert Striegel was driving an automobile with lighted headlights north on Ferndale Avenue. He intended to make a left turn into Black Oak Drive. As he approached the intersection an automobile with lighted headlights was approaching from the north. After this car passed, without giving any signal he made a left turn, straddling the button as he did so. Striegel testified that he did not put out his hand for a left turn but just for a stop. He stopped at the intersection to allow the vehicle from the north to pass through. As Striegel was making the turn, plaintiffs on the motorcycle, without the headlight lighted, came into the intersection. The Striegel car collided with the motorcycle. When the vehicles came to rest, both wheels of the motorcycle were under the front bumper of the automobile.

Hoover testified he first saw the Striegel car when he was about 40 feet north of the north end of the intersection and at that time the car was about 80 feet from the south end of the intersection; that Striegel did not give any indication

he was going to make a left turn. A police officer testified the accident occurred at 7:45 p. m. Two officers testified that when they arrived at the scene at 8:05 p. m., it was "near dark"— "in the late evening dusk state."

Appellants' assignments of error are that the court erred in giving two instructions, which we call A and B, and in refusing to give an instruction which we call C. The instructions read:

A. "You are instructed that the provisions of law requiring a motorist who is turning to the left to signify his intention to do so by giving an appropriate signal for a distance of fifty feet, do not apply to a vehicle which has been brought to a stop immediately before entering the intersection where the left turn is made." ("Requested by defendant.")

B. "You are instructed that while ordinarily the negligence of the operator of a vehicle is not imputed to a passenger on or in such vehicle, however, this rule is subject to the exception that should you find from the evidence that the motorcycle in question was being operated on the public highway one-half hour after sundown and one-half hour before sunup without a lighted headlight, and if you further find that an ordinarily prudent person, placed in the same position that Barbara Marshall was as a passenger on the motorcycle, in the light of all the surrounding circumstances would or should have known that the motorcycle was traveling on the public highway without a lighted headlight, and if you further find that the failure to have the lighted headlight contributed to the happening of the accident in any manner, however slight, then, unless you further find that any unusual circumstances were shown in evidence which excused her from negligence, if she was negligent, then neither the operator nor the passenger may recover from the defendants." (The instruction bears the notation "Requested by Judge.")

C. "You are reminded of the fact that the vehicle in which plaintiffs were riding at the time of the accident in question was then being operated by the plaintiff Thomas Fred Hoover. You are instructed that the driver's negligence, if any, may not be imputed to the other plaintiff and that, therefore, you should find that there was no contributory negligence on the part of the plaintiff Barbara Marshall, unless you should find that there was personal negligence on her part—that is, some negligent conduct of her own—which contributed as a proximate cause to her injury." ("Requested by plaintiffs.")

After the jury had deliberated about an hour, they returned to the courtroom. The foreman indicated they desired some instructions reread. The court asked which ones. "THE FOREMAN: Someone stated where there is a left hand turn, the stopping signal was made, that you said it wasn't necessary to make the left hand signal. That is one." The court then read section 544 of the Vehicle Code to the jury, the instructions set forth in the footnote,[1] and reread instruction A. The

---

[1] "You are instructed that the failure of a motorist to signal his left turn at an intersection and making such a turn when a motorist approaching from the opposite direction is so close as to constitute an immediate hazard, is negligence per se.

"The driver of a vehicle within an intersection intending to turn to the left should yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

"Said driver turning left having so yielded and having given a signal when and as required by this code may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the driver making the left turn.

"Both the approach for a right turn and a right turn shall be made from that portion of the roadway as close as practicable to the right-hand curb or edge of the highway.

"(b) Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered, unless otherwise directed by markers, buttons or signs.

"(c) Local authorities in their respective jurisdiction may, by placing markers, buttons or signs within or adjacent to intersections, require and direct that a different course from that prescribed in this section be traveled by vehicles turning, and when markers, buttons or signs are so placed no driver of a vehicle shall make a turn other than as directed and required by such markers, buttons or signs.

"The words just quoted from the Vehicle Code namely, that 'no person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety,' do not mean that the driver of a motor vehicle, before making such a turn, must know that there is absolutely no possibility of accident.

"They mean that before starting to turn a vehicle on a public highway, and while making the turn, the driver of the vehicle must use such precaution as would satisfy a reasonably prudent person, acting under similar circumstances, that the turn can be made safely.

"You are instructed that Sections 618, 619 and 620 of the California Vehicle Code in full force and effect at the time of the happening of this accident provided that every vehicle, including motorcycles, during the period from one-half hour after sunset to one-half hour before sunrise, was required to be equipped with at least one, and not more than two, lighted head lamps while operated upon any public highway.

"In that connection you are further instructed that if you find from the evidence here that the motorcycle operated by the plaintiff Hoover was being operated in violation of this requirement, such conduct con-

following then occurred: "THE FOREMAN: That covers all of that. It also covers part of another question that was asked as to the legality of the motorcycle coming through without the light. I think you instructed us to regard the law in that last there. MR. BAUDER: I think Mrs. Anderson has a question. MRS. ANDERSON: (A juror) If I may ask the Judge this question: That was just the point, that very last statement you made, Judge Emme. When we come to a stop our hand goes down naturally to give the signal. Then when we proceed and we are going to make a left hand turn we do make a signal to signify that we are turning left at that point; even though we have stopped and given the signal our hand goes down; then we do turn and the law says we make a signal this way to make a left turn. THE COURT: All I can do is read you the instructions and the provisions of the law which I have. I think the law I have read to you answers your questions. . . . A JUROR: Is this the law? If I am coming up to an intersection, I have made my stopsign, how does anybody know I am going to turn left unless when I proceed I put my hand out that I am going to turn left? THE COURT: I have given you the law on that."

Later the jury again returned to the courtroom and the following occurred: "THE COURT: Mr. Foreman, have you arrived at a verdict? THE FOREMAN: Your Honor, they still differ on your instructions. I mean, they don't interpret them the same. We would like to have read over the four points of negligence and the last part that you read before in regard to the negligence of the boy running without lights. THE COURT: You mean the issues to be determined, the various forms of issues to be determined? THE FOREMAN: The issues to be determined, yes." The court then read California Jury Instruction Civil No. 113, issues to be determined, and asked: "What was the other question? THE FOREMAN: The last part of the question—I mean the last part of what you read to us before about the boy running on a motorcycle without lights." The court then reread instruction B on the question of imputed negligence.

Vehicle Code, section 544, in part, reads: "No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with

---

stitutes negligence in and of itself and, if such negligence proximately contributed to the happening of the accident, plaintiff Hoover is not entitled to recover and your verdict must be in favor of defendants."

reasonable safety and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement." Section 545, in part, reads: "The signals herein required shall be given either by means of the hand and arm or by a signal lamp or mechanical signal device of a type approved by the department." Section 546, in part, reads: "All signals herein required given by hand and arm shall be given from the left side of a vehicle in the following manner and such signals shall indicate as follows: (a) *Left turn*—hand and arm extended horizontally beyond the side of the vehicle."

We are of the opinion that instruction A is manifestly not a correct statement of the law. A turn to the left can be made "only after the giving of an appropriate signal in the manner provided herein [hand and arm extended horizontally beyond the side of the vehicle] in the event any other vehicle may be affected by such movement." Turning to the left in an intersection, without warning, and cutting the corner to go into the intersecting street in front of a vehicle coming in the opposite direction may constitute negligence. (*Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223 [28 P.2d 932].) The effect of the instruction was to tell the jury that, as a matter of law, the driver of a vehicle which has been brought to a stop before entering an intersection where a left turn is to be made, need not, under any circumstances, signify his intention so to do. Whether the motorcycle would be affected by defendant's turning to the left, and hence whether, in the exercise of ordinary care, he should have given the appropriate signal to indicate his intention to make the left turn were questions of fact for the jury. (*McDevitt* v. *Rogers*, 58 Cal.App.2d 307, 308 [136 P.2d 323]; *Day* v. *General Petroleum Corp.*, 32 Cal.App.2d 220 [89 P.2d 718].)

The court erred in giving instruction B. This instruction told the jury that, as a matter of law, the negligence of the operator of the motorcycle was imputed to plaintiff Marshall if the motorcycle was being operated a half hour after sundown, without a lighted headlight; and if an **ordinarily** prudent person, placed in the position of plaintiff Marshall, "would or should have known that the motorcycle was traveling on the public highway without a lighted headlight," and if the failure to have the lighted headlight contributed to the accident; and that unless some unusual circumstances were shown which excused her from negligence, if she was negligent, neither she nor the operator could re-

cover. The instruction is complex, confusing, and a wholly incorrect statement of the law. The law does not recognize any such exception to the general rule of imputed negligence as stated in the instruction. The mere fact that the motorcycle was being operated more than half an hour after sundown and that an ordinarily prudent person, placed in the position of plaintiff Marshall, would or should have known such fact, did not impute to her the negligence, if any, of the operator; neither did it constitute negligence on her part as a matter of law. The instruction is a formula instruction and it completely ignores the question of proximate cause.

Negligence of the driver of a vehicle in operating the machine cannot be imputed to a guest on the ride who has no control over him, or supervision or direction as to the manner in which the vehicle should be operated. In *Edwards* v. *Freeman*, 34 Cal.2d 589 [212 P.2d 883], the rule is stated thus, page 592: "In the absence of the essential characteristic of the right of control, there is no true agency and, therefore, no 'imputation' of the driver's negligence to the passenger. [Citations] . . . And, as said in the Marchetti case, *supra* (204 Cal., at page 681 [269 P. 529]) : 'The negligence of the driver of a machine . . . cannot be imputed to a passenger therein in the absence of any evidence showing that the latter exercised some control over the driver or that he possessed the power to supervise or direct the manner in which the automobile should be operated . . .' " There was no evidence of any relationship between plaintiffs Hoover and Marshall other than that of host and guest. There was no evidence that Marshall had any control over Hoover or any supervision or direction as to the manner in which the motorcycle should be operated. The mere fact that an ordinarily prudent person, placed in the position of Marshall, would or should have known that the motorcycle was being operated without a headlight, did not impute Hoover's negligence, if any, to her. The only evidence on the subject was that she did not know whether the headlight was lighted.

█ Instruction C is a standard form of instruction (California Jury Instruction Civil No. 210-C), a correct statement of the law applicable to the facts of this case, and upon the record should have been given. There being no evidence that plaintiff Marshall had any control over Hoover or supervision or direction as to the manner in which the motorcycle should be operated, the jury was required to find that there was no

contributory negligence on her part unless it found there was negligent conduct of her own which contributed as a proximate cause to her injury.

Further, the answer did not include the defense of imputed negligence. In general terms it was alleged that plaintiffs were guilty of contributory negligence. "Such a plea is not sufficient for one who seeks to charge a person with the negligence of another in the operation of an automobile; a defendant must assert that the injured person controlled, or had the right to control, the vehicle in which he was riding." (*Campagna* v. *Market St. Ry. Co.*, 24 Cal.2d 304, 307 [149 P.2d 281].)

The evidence would support a determination that plaintiff Hoover's injuries were proximately caused by the negligence of defendant, or by his own negligence, or by the simultaneous negligence of both defendant and plaintiff Hoover. It would appear from the testimony of Robert Striegel that the jury could have readily found that he was negligent and that his negligence was a proximate cause of the accident. The evidence would support a finding that if he had given a signal for a left turn the accident would not have happened. It is apparent from the questions of the jurors that the jury placed great emphasis on instruction A. It was reread and emphasized. The verdict for defendant and against Hoover may have resulted from the tenable view of the evidence that although Hoover was not negligent he could not recover because under the erroneous view of the law, stated in instruction A, defendant was not negligent. The probability is that the jury did not decide whether Hoover was negligent, for if they followed the instruction as to the issues to be determined (which was reread), and we must presume they did, they first determined whether defendant was negligent, and having determined, because of instruction A, that he was not, they then found, as instructed to do, for defendant. On the evidence, the effect of instruction A was to direct a verdict for defendant. The error was clearly prejudicial. (*Edwards* v. *Freeman*, 34 Cal.2d 589, 594 [212 P.2d 883]; *Huebotter* v. *Follett*, 27 Cal.2d 765, 770 [167 P.2d 193].)

All three instructions applied to the case of plaintiff Marshall. Instruction B was not only reread and emphasized, but reread without any request therefor and out of context. If Hoover was negligent, his negligence did not excuse the negligence of Striegel as to plaintiff Marshall. It is doubtful whether the jury would have found against Marshall if erro-

neous instructions A and B had not been given and instruction C had been given. Everything we have said with respect to the prejudicial character of instruction A as to Hoover, applies to Marshall. It is apparent she suffered serious prejudice. We cannot say that had the errors not occurred, a different result would not have ensued. Plaintiffs are entitled to have their case retried under proper instructions.

The judgments are reversed.

Shinn, P. J., and Wood (Parker), J., concurred.