Karl SIEMES (Plaintiff), Respondent,

v.

Neal E. ENGLEHART (Defendant), Appellant.

No. 30624.

St. Louis Court of Appeals.

Missouri.

May 16, 1961.

Motion for Rehearing or to Transfer to Supreme Court Denied June 16, 1961.

---

W. Munro Roberts, Jr., Heneghan, Roberts & Cole, St. Louis, for appellant.

Michael B. Gershenson, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action brought by Karl Siemes, as plaintiff, against Neal E. Englehart and Roy Porter, as defendants, to recover damages for personal injuries alleged to have been sustained on January 21, 1958, as the result of a collision between a truck in which plaintiff was riding and automobiles operated by defendants. At the close of plaintiff's case the court sustained defendant Roy Porter's motion for a directed verdict, and the cause proceeded against defendant Englehart, resulting in a verdict and judgment for plaintiff in the sum of $7,000. Defendant Englehart has appealed. We will hereafter refer to Appellant Englehart as defendant, and Respondent Siemes as plaintiff.

The petition alleged that on January 21, 1958, plaintiff was riding as a passenger in a truck northbound on Compton Avenue, and when in the intersection of Compton Avenue and Pine Street, said truck was struck by an automobile operated by defendant Englehart, who was driving west on Pine Street, causing said truck to be thereafter struck by an automobile being driven south on Compton Avenue by defendant Roy Porter.

It was further alleged that traffic at said intersection was controlled by electric signals erected by the City of St. Louis, which were operating at said time. The City ordinance with respect to traffic signals was pleaded, which ordinance provides that drivers facing a green signal may proceed, and drivers facing a red signal shall stop, and that every person shall obey the instructions of all official traffic signals unless otherwise directed by police officers. The negligence alleged against defendant Englehart was (a) that said defendant disobeyed the red traffic control signal by failing to stop when said signal was red just prior to and during the time he entered the intersection; (b) that he failed to keep a vigilant lookout ahead and laterally for motor vehicles in and near his line of travel, and in and near said intersection; (c) that he operated his motor vehicle at a high and excessive rate of speed under the circumstances; (d) that he failed to sound a warning of the presence and movement of his automobile; (e) that he failed to have his automobile under such control that upon the first appearance of danger of collision with the truck, he could have swerved or slackened the speed of his automobile and have prevented the collision; and (f) that he was guilty of negligence under the so-called humanitarian doctrine.

By his answer defendant Englehart admitted all the averments of the petition except those charging him with negligence, and the allegations setting forth plaintiff's alleged injuries.

Defendant here contends that the Court erred (1) in sustaining plaintiff's objections to defendant's offer of proof concerning payments received by plaintiff from his employer during the seven weeks he was off work as a result of his injuries; (2) in the giving of plaintiff's verdict-directing instruction; (3) in giving plaintiff's measure-of-damage instruction; (4) in overruling defendant's objection to statements made

by defendant's counsel during his closing argument; and (5) in allowing the verdict to stand which is excessive. In view of the issues thus presented we will set out the facts bearing on same and review the evidence in the light most favorable to plaintiff.

The accident occurred on January 21, 1958, at the intersection of Compton Avenue and Pine Street in the City of St. Louis, Missouri. Compton Avenue is a north and south thoroughfare, and Pine Street runs east and west. Both streets are about 40 feet wide, and are paved with asphalt.

At the time of the accident plaintiff was riding in a truck which belonged to his employer, Union Electric Company. The truck was being operated by Harry Guenther, who was also an employee of Union Electric Company. These two men were at the time on their way to the Bell Telephone Company on business for their employer. Plaintiff's title, according to his testimony, was "Distribution Service Tester", and that of Mr. Guenther was "Assistant Distribution Tester." Mr. Guenther was plaintiff's assistant. Plaintiff testified he was in charge of the truck, and that Guenther was under his supervision as to the performing of electrical services. He further testified, " * * * we work as a team. He knows the job just about as well as I do. And most of the time instructions weren't necessary. * * * Indirectly I was in charge of the crew.

"Q. On the occasion in question, meaning on January 21st, as you were approaching this intersection, it was your authority as the boss to tell Mr. Guenther what route to take, if you so desired; is that correct?

"A. I could have designated a route; yes." On cross-examination he stated he was not a foreman, but was in charge of the crew on this particular truck, and this truck was assigned to the crew.

Just prior to the accident the truck was being driven north on Compton Avenue at a speed of 20 to 25 miles per hour, and was being operated in the northbound traffic lane about a foot or eighteen inches east of the center line of the street. There were, at the time, electric signal lights at this intersection. Harry Guenther, who was driving the truck, testified that when the truck reached the alley between Pine and Lawton he noticed that the traffic signal showed green. Plaintiff testified that the truck was about a car length and a half from the south curb line of Pine Street when he observed the traffic signal facing them was green and that it remained green until after the truck passed into the intersection. Guenther testified that as he approached the intersection he slowed down the speed of the truck slightly, and when he reached the intersection his foot was off the accelerator and he was ready to apply the brake. He stated that when the front bumper of the truck was about even with the south curb line of Pine Street, he observed the approach of defendant's car. It was coming from the east on Pine Street and was at the time about 150 feet east of the intersection. It was then traveling about 40 or 45 miles per hour, near the center of the street. Guenther testified he had the green light in his favor and thought surely defendant would stop for the stop light, and that he did not think there would be a collision because defendant was so far away. Guenther then proceeded into and across the intersection. Defendant did not stop, but "just plowed into us." When Guenther realized defendant's car was going to hit the truck he said to plaintiff, "Hold on, * * * He is going to hit us", and tried to accelerate the speed of the truck. Plaintiff stated, however, that he did not believe the truck picked up any speed as a result of Guenther's action in this regard. At the time of the collision Guenther had his foot on the accelerator and the truck was traveling 20 or 25 miles per hour. Guenther stated that when the collision occurred the front end of the truck was four to six feet north of the center line of Compton. Plaintiff testified that the front bumper on the truck was approximately at the center of the intersection when he first saw defend-

ant's car traveling 40 to 45 miles per hour. He stated that defendant had his head down at the time, and that next to defendant on the seat were papers or "something". Defendant testified he always kept catalogues on this seat. Plaintiff further testified that defendant kept coming toward the truck, and when he got to within 15 or 20 feet from it he looked up and then attempted to stop. Plaintiff thought the speed of defendant's car when it hit the truck was about the same as when he first saw it. He stated that the defendant's car slid about 10 or 15 feet into the truck, striking same behind the door and toward the rear, knocking the truck clockwise about 2 feet over the center line of Compton Avenue. Immediately thereafter the truck was hit on its left side by defendant Porter's car and knocked back to its proper lane. The Porter car was traveling south on Compton. The truck came to a stop, facing northeast and about 5 feet from the northeast corner of the intersection. After the collision Guenther said to defendant, "Didn't you see the red light?" Defendant replied, "I guess I didn't." Both plaintiff and Guenther testified they heard no horn sounded. According to the testimony of Guenther, defendant's car did not swerve. There were no other cars within one hundred feet of defendant as he proceeded west on Pine Street. It had been misting rain that morning and the streets were still damp at the time of the accident. The accident occurred about 2:30 in the afternoon. When the truck reached the intersection Guenther saw Porter's car coming south on Compton. It was at the time 25 feet north of the intersection. Defendant testified he did not see the stop light at the time, although he knew there was one there.

He stated he first saw the truck when he was 35 or 40 feet from the intersection. At that time, according to defendant's testimony, the front bumper of the truck was ten feet north of the south curb line of Pine Street. He claimed he was traveling 20 to 25 miles per hour, and that when he saw the truck he applied his brakes and went right into the truck. He said his car skidded 15 or 20 feet.

Plaintiff testified that as a result of his injuries he could not work for seven weeks, and that his salary at the time of the accident was $127.00 per week. He also testified he was not paid wages during the seven weeks he was away from work on account of his injuries. He stated he did receive workmen's compensation benefits in the amount of $37.50 per week. He was then asked by defendant's counsel if the balance of his wages was paid to him by "Union Electric on sick leave." An objection was sustained to this question, whereupon counsel for defendant stated that "by this line of questioning counsel could prove that this plaintiff suffered no loss of remuneration, because he was fully compensated either from Workmen's Compensation or by Union Electric, * * *." The Court sustained an objection to this offer of proof. Thereafter, plaintiff was again called to the witness stand and again interrogated as to whether he received any pay during the seven weeks he was off from work. The Court sustained plaintiff's objection to this line of inquiry. Thereupon defendant's counsel made a formal offer of proof, the substance of which was, that under a contract between the labor union, of which plaintiff was a member, and the Union Electric Company, plaintiff was entitled as a part of his wages, to benefits in the form of sick leave, and by reason thereof plaintiff was compensated in full for the seven weeks he was unable to work as a result of his accident. The court sustained plaintiff's objection to this offer of proof, and this ruling of the court forms the basis of defendant's first assignment of error in this court.

■ In our judgment the Court did not err in sustaining the objection to the offer of proof. From said offer it appears that the payments were not made because they were earned by plaintiff during the period of disability, but were paid to him on account of accumulated sick leave provided for in the contract between plaintiff's union

and his employer. Under such circumstances we do not agree with the contention of defendant that during the period plaintiff received these payments, he was freed from his obligation to compensate plaintiff for his loss of wages. The amounts received were not wages in the strict sense of that term, but were disability payments which plaintiff had earned under his contract of employment by rendering service prior to the date of disability. The money so paid is analogous to sums paid under a policy of accident insurance, and as in such instances, the person whose tortious act caused the injury should not, by reason of said payments, be relieved of liability for earnings lost by the injured person as a result of said injury. This is the holding in those cases dealing with the subject which we have during our research been able to find. Beaty v. Buckeye Fabrick Finishing Co., D.C., 179 F.Supp. 688; D'Amico v. Resnik, Sup., 197 N.Y.S.2d 826; Ridilla v. Kerns, D.C.Mun.App., 155 A.2d 517; Seidel v. Maynard, 279 App.Div. 706, 108 N.Y.S.2d 450; City of Philadelphia v. Philadelphia Rapid Transit Co., 337 Pa. 1, 10 A.2d 434; Lewis v. County of Contra Costa, 130 Cal.App.2d 176, 278 P.2d 756; Martin v. Sheffield, 112 Utah 478, 189 P.2d 127; Tubb v. Lief and Gordon (Sask.1932) 3 West.Week.Rep. 245.

The cases relied upon by defendant are clearly distinguishable on their facts. Thus in Moon v. St. Louis Transit Company, 247 Mo. 227, 152 S.W. 303, it appears that plaintiff, president of a corporation, after sustaining an injury was unable to go to his office daily, but did go there once or twice a week and attended a few directors' meetings. His salary was paid to him regularly without any deduction. It was held that, in the absence of evidence showing that plaintiff did not perform the services incumbent upon him as president, it was presumed that his salary was not illegally paid to him; and that, therefore, the salary payments were not to be treated as gratuities, and that plaintiff could not recover for loss of time from the person responsible for his injury. The above case, therefore, stands

for the proposition that where wages are earned by a plaintiff during the period he is suffering from an injury, he may not recover for loss of time. In the case at bar the payments made to plaintiff were not for services performed during the period he was suffering from his injury, but were amounts previously earned payable as sick leave benefits, and not as wages. In Lee v. Western Union Tel. Co., 51 Mo.App. 375 it appears that during the time for which plaintiff claimed damages for loss of time, he was actually on a mission for his employer and was paid his regular wage without deduction. Defendant also relies on Ephland v. Missouri Pac. Ry. Co., 57 Mo. App. 147. In that case it does not appear whether plaintiff earned the wages paid to him during the period of disability, but such must have been the case, otherwise such payment would have been considered a gratuity, in which event plaintiff would have been entitled under the decisions to recover for loss of time notwithstanding the payments to him. Moon v. St. Louis Transit Co., supra.

■■■ Appellant complains of error in the giving of plaintiff's Instruction No. 1. This was a verdict-directing instruction, which submitted the issue of defendant's alleged negligence in failing to stop when the traffic signal at said intersection exhibited a red light against him just prior to and at the time plaintiff entered the intersection. By said instruction the jury was advised "that at the time of the collision mentioned in evidence there were official electric traffic signals controlling the traffic at the intersection in question and there was in full force and effect, Ordinance No. 46687 of the City of St. Louis, Missouri, which, among other things, provided that whenever traffic is controlled by official traffic control signals, the color Red means that drivers facing such signal shall stop, and that every person shall obey the instructions of all official signals unless otherwise directed by police officers; * * *."

It is urged that it was error to instruct the jury that there was an official electric

signal controlling the intersection, since there was no evidence to support same. The petition in paragraph 1 alleged that at the time of this accident the "traffic at said intersection was controlled by electric traffic signals furnished and erected by the City of St. Louis, which were operating at said time and place." Defendant in his answer admitted "that the traffic at said intersection was controlled by an electric traffic signal * * *." In paragraph 2 of the petition plaintiff pleaded Ordinance No. 46687 of the City of St. Louis, which provides for green and red traffic signals, and specifies that drivers facing a green signal may proceed through the intersection, and drivers facing a red signal shall stop; and provides that every person shall obey the instructions of all official traffic control signals unless otherwise directed by police officers. It was then alleged that defendant was negligent in the following respects: "That no police officers were directing traffic at said time and place, and that the defendant, in violation of the aforesaid Ordinance No. 46687, Sections 40(2) and 41, disobeyed the red traffic control signal governing his line of traffic by failing to stop when said red signal was on just prior to and during the time he entered the intersection." Defendant in his answer admitted the averments contained in paragraph 2 of said petition. Plaintiff having admitted in his answer the Ordinance and that there was a traffic control signal at the intersection that was operating at the time, which he disobeyed, it cannot be said that the court erred in instructing the jury that there was an official electric signal controlling the intersection in question. A trial court does not commit reversible error in its instructions by assuming or failing to require the jury to find facts which are admitted by the pleadings. Morris v. Equitable Assur. Soc. of U. S., 340 Mo. 709, 102 S.W.2d 569; Clardy v. Kansas City Public Service Co., 227 Mo.App. 749, 42 S.W.2d 370. And since it is clear from the pleadings that the traffic signal in question was maintained under a city ordinance no valid objection could be made to the use of the word "official" in describing same.

In the opening statement counsel for defendant stated: "One of those human things occurred. He (defendant) frankly did not observe the stop sign at the time he approached it. He knew it was there, but, as I say, one of those human things happened, his mind had just drifted off momentarily and he didn't notice it." On direct examination defendant testified as follows:

"Q. * * * was there an electric stop sign at Compton and West Pine? A. I didn't see one.

"Q. Do you know whether or not there was one there? A. Yes sir.

"Q. What was the reason or occasion you didn't happen to see the stop sign. A. I don't know."

During his final argument counsel for defendant stated, referring to his client; "he wasn't observing the traffic signal." From the above testimony it is apparent that the existence of the traffic signal at the intersection in question was not considered by defendant or his counsel as a real disputed question in the case.

■ It is not error for an instruction to inform the jury of the existence of a material fact which the parties, by their testimony, statements, and manner of examining witnesses, assume to exist. Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S.W. 583; Banks v. Koogler, Mo., 291 S.W.2d 883.

■ Defendant's next point is that Instruction No. 1 was erroneous for the reason that "it failed to hypothesize facts sufficient to aid the jury in the determination of the issue of defendant's negligence * *; and gave the jury a false standard of conduct for plaintiff." This assignment is too general and abstract under Rule 83.05 of the Supreme Court Rules, V.A.M.R., and for that reason presents nothing for review.

Smyth v. City of St. Joseph, Mo.App., 297 S.W.2d 578; Weekley v. Wallace, Mo.App., 314 S.W.2d 256.

■ It is urged that Instruction No. 1 was erroneous for the further reason that it ignored the issue of contributory negligence as submitted in Instruction No. 2. Instruction No. 2 was given at defendant's request and submitted the doctrine of imputed negligence, authorizing a verdict for the defendant if the jury found that the driver of the truck, in which plaintiff was riding, was guilty of negligence in certain respects. An examination of the transcript reveals that defendant's answer did not include the defense of imputed negligence, but in general terms averred that "* * * whatever injuries, if any, plaintiff may have sustained on the occasion in question, were sustained as a direct and proximate result of plaintiff's own carelessness and negligence directly contributing thereto." Such a plea is not sufficient to put in issue the matter of imputed negligence. Under the law plaintiff was charged with the duty of exercising ordinary care for his own safety. By Instruction No. 2 plaintiff was sought to be charged with the negligence of another, whose negligence would be the breach of the highest degree of care; and this without a pleading to support same. This was not proper. Campagna v. Market Street Ry. Co., 24 Cal.2d 304, 149 P.2d 281; Hoover et al. v. Striegel et al., 99 Cal.App.2d 833, 222 P.2d 963; LeDoux v. Martinez, 57 N.M. 86, 254 P.2d 685; White v. Dickerson, Inc., 248 N.C. 723, 105 S.E.2d 51. Instruction No. 2 submitted a false issue and, it was therefore not error to give Instruction No. 1, which ignored same.

Appellant next complains of the giving and reading to the jury of Instruction No. 6, a measure-of-damage instruction. It submitted loss of earnings as an element of plaintiff's damages. It is urged that this was error for the reason that plaintiff had actually been paid during the period he was off from work. What we have said

with reference to appellant's first point is applicable here. We rule against appellant on this contention.

■ It is further contended that Instruction No. 6, was erroneous in that it authorized recovery for medical services rendered by Dr. Parsons when his bill for services was not sufficiently proven, nor shown to be necessary medical expense. Dr. Parsons testified that his bill for services would be $275.00, which was a reasonable charge. The testimony of Dr. Parsons showed that his examinations and treatment of plaintiff were directed to areas of plaintiff's body concerning which complaints were made. In our opinion a finding would be justified that the expense of this medical service was reasonably necessary.

■ It is urged that the court erred in overruling defendant's objection to the argument of plaintiff's counsel concerning plaintiff's inability to engage in certain activities for the reason that it was not supported by the evidence. This alleged error was not preserved for review in defendant's motion for a new trial. For that reason the action of the trial court with reference to this matter will not be reviewed. Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348.

Appellant's final assignment is that the verdict is excessive.

■ As a result of the collision between the truck and defendant's car, plaintiff was thrown violently across the cab of the truck, his left arm and chest striking the steering wheel. Immediately thereafter the truck was struck on its left side by Roy Porter's automobile, and plaintiff was thrown against the right door of the truck with such violence that the glass in said door was shattered. Plaintiff's left leg hit the dash board.

Plaintiff sustained three fractured ribs in the left side of his chest, and injuries to his neck, left shoulder, left arm and left knee. His left lung was partially compress-

ed as a result of the fractures of the ribs. Plaintiff was first treated for these ailments by Dr. Sutter. In all, plaintiff visited Dr. Sutter fifteen times between the date of the accident, January 21, 1958, and August or September 1958. Plaintiff suffered pain all during this period in his left chest, neck and left arm. He experienced some loss of grip in his left hand. Plaintiff was off from work for seven weeks, and at the end of that period returned for light duties. On April 20, 1959, plaintiff consulted Dr. Parsons. At that time he was experiencing pain in the left chest, left elbow, neck, and occasional back pains. For the neck condition Dr. Parsons recommended cervical traction twice a day for 30 minutes, using 8 to 10 pound weights. At the time of the trial, March 9, 1960, plaintiff was still using it for an hour three or four times a week. Plaintiff also complained of numbness in his left arm, and loss of grip in his left hand. A neurological examination by Dr. Parsons revealed irritation of the nerves on the left side of plaintiff's body, which supply the left shoulder and upper arm which resulted in weakness of the muscles and sensory changes in that area. Plaintiff testified at the trial that he still had pain in his neck and shoulder, and that his left arm gets numb at times. Dr. Sutter's bill for services was for $209.00. Dr. Parsons testified that his bill for services would be $275.00.

While it may be conceded that the verdict was most substantial for the character of injuries plaintiff sustained, we do not believe the evidence warrants interference by this court on the ground of excessiveness.

It follows that the judgment rendered in the circuit court should be affirmed. It is so ordered.

RUDDY, J., and CLEMENS, Sp. J., concur.

WOLFE, J., not participating.